OPINION
Defendant-appellant, Brian W. Gaines, appeals his conviction in the Butler County Court of Common Pleas for burglary. We affirm the decision of the trial court.
During the morning of October 2, 1998, Roger L. Lindsay was drinking a cup of coffee in the front room of his home on Goldman Avenue in Middletown. Lindsay noticed a black and silver Lincoln Continental drive slowly down Goldman Avenue and pull over on an adjacent street. Lindsay did not see the car's driver and did not see anyone exit the car. About one minute later, Lindsay saw appellant walk through his yard. Lindsay stood up and walked to the front doorway. Then Lindsay saw appellant again, carrying a television and running through his yard. Lindsay immediately called 911.
Shortly thereafter, Officer Frederick Shumate of the Middletown City police responded. He arrived at about 11:00 a.m. and interviewed Lindsay. Lindsay described appellant as a "colored man" who helped out at a neighboring home for the "mental retarded guys." Lindsay said he had seen appellant fifteen or twenty times before. Lindsay stated that "whenever that one woman, I think here [sic] name's Brenda, was there working, that's when he would come over there."
The police contacted Lynn Hibbard, the Director of Supported Living for Active Learning Systems ("SLALS"), which provides supervisory services to a residence at 2807 Goldman Avenue. A screen in the front of the residence had been sliced and the rear patio door was slightly ajar. After checking the residence, Hibbard confirmed that a television had been taken, but nothing else appeared to be missing. Other electronics remained, including two televisions, a fax machine, telephones, and a microwave. Also, money and prescription drugs stored in the residence had not been taken.
Hibbard explained that three men live at the SLALS residence and receive care before and after their workdays. Between the hours of 8:30 a.m. and 4:30 p.m., however, they are usually at work and the residence is empty. Hibbard confirmed that one of the staff members, Brenda Hardeman, had an African-American boyfriend who frequented the SLALS residence.
Officers were dispatched to Hardeman's address. The suspect was described as "a black male approximately five ten, approximately forty years of age, wearing dark clothing and medium build. Left in a two-tone vehicle being a black, possibly gray colored * * * Cadillac."[1] Appellant was apprehended after he was seen driving a two-toned black Lincoln Continental to the apartment complex where Hardeman lived. The police searched the car that appellant was driving and found a steak knife in the front-seat. The television was not found.
Lindsay subsequently identified appellant at a show-up. Lindsay testified that when the police presented appellant for identification, appellant was wearing a different shirt than he had been wearing earlier.
At trial, Hardeman testified for the defense. She stated that on the day of the burglary, she woke up at 5:30 a.m. to get her granddaughter ready for school. Hardeman testified that appellant had slept over that night and was in bed when she left her home at 9:45 a.m. to drive her mother to the hospital for a medical appointment. When Hardeman returned home at 10:15 a.m., appellant was still at her home.[2] She stated that appellant left her home at approximately 10:45 a.m. to make some job applications at a local mall. Hardeman did not see appellant again until after he was arrested.
Hardeman further testified that appellant often helped with the care of the men who lived at the SLALS residence by assisting them with shaving, bathing, and other tasks. Hardeman noted that appellant was particularly helpful in keeping one of the men, who suffered from schizophrenia, under control. Hardeman testified that the SLALS residence had a keypad, by which she and other staff members obtained entry, and that she had given appellant the combination to this keypad several times. According to Hardeman, appellant knew about the other valuable items in the residence, which included a new fax machine, two new televisions, and a stereo system. Appellant also knew that money and prescription medicines were kept in a file cabinet.
Hardeman testified that appellant was driving her car when he was apprehended. When asked why there was a steak knife in her car, Hardeman explained that it was used to push up fabric on the roof of the car when it started to fall down.
At the conclusion of a jury trial, appellant was found guilty of burglary. Appellant subsequently filed a pro se motion for new trial, in which he claimed that he had received ineffective assistance of counsel. This motion was overruled and the trial court sentenced appellant to four years in prison. Appellant appeals, raising two assignments of error.
Assignment of Error No. 1:
 THE CONVICTION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE
In his first assignment of error, appellant contends that his conviction is against the manifest weight of the evidence and is based on insufficient evidence.
To determine whether a verdict is against the manifest weight of the evidence, an appellate court must do the following:
 The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.
State v. Thompkins (1997), 78 Ohio St.3d 380, 387, quoting Statev. Martin (1983), 20 Ohio App.3d 172, 175. When reviewing a claim that a verdict is against the manifest weight of the evidence, an appellate court must keep in mind that the jury was in the best position to judge the credibility of the witnesses and the weight to be given to the evidence. State v. DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus. The court of appeals must unanimously disagree with the jury's resolution of conflicting testimony in order to reverse a conviction based on a finding that the verdict is against the weight of the evidence.Thompkins at 389.
Appellant was convicted of burglary, a violation of R.C.2911.12(A)(3). Burglary is defined as "[t]respass in an occupied structure * * * with purpose to commit in the structure * * * any criminal offense." R.C. 2911.12(A)(3).
Appellant argues that the weight of the evidence demonstrated that he did not commit the burglary. In support of his claim, appellant asserts that he was at Hardeman's home during the time of the burglary, that he had no motive to burglarize the SLALS residence, and that the police never found the television in his possession. Because motive is not an element of burglary, the fact that the prosecution may have failed to show that appellant had any motive to steal from the people he had helped to care for is of little consequence. Appellant also argues that the only evidence connecting him to the burglary was the identification of Lindsay, and that this identification was not reliable.
The evidence shows that although appellant was at Hardeman's home on the morning of the burglary, he left before 11:00 a.m. to apply for jobs at a local mall. Although the television was never found, Lindsay identified appellant as the man who had run through his yard with a television that matched the description of the television that was stolen from the SLALS residence. Even though appellant attacks the reliability of Lindsay's testimony, we defer to the jury's determination of the credibility of this eyewitness. Reviewing this evidence, we cannot say that the jury clearly lost its way and created a miscarriage of justice so that appellant's conviction should be overturned as against the manifest weight of the evidence.
Appellant's brief also appears to argue that there was insufficient evidence to sustain his conviction. An appellate court's standard of review of a claim of insufficient evidence was set forth in State v. Jenks (1991), 61 Ohio St.3d 259, at paragraph two of the syllabus:
 An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. (Jackson v. Virginia
[1979], 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560, followed.)
Reviewing the evidence in a light most favorable to the prosecution, a rational trier of fact could have found that the elements of burglary were proven beyond a reasonable doubt. We find that the record contains sufficient evidence to support appellant's burglary conviction. The first assignment of error is overruled.
Assignment of Error No. 2:
 COUNSEL WAS INEFFECTIVE BY FAILING TO INVESTIGATE, INTERVIEW WITNESSES AND TO PREPARE A DEFENSE.
In his second assignment of error, appellant asserts that his counsel was ineffective. To demonstrate a claim of ineffective assistance of counsel, a defendant must first show that under the circumstances, counsel's representation did not meet the objective standard of reasonable competence. Second, a defendant must show that he was prejudiced at trial as a result of this deficiency.Strickland v. Washington (1984), 466 U.S. 668, 687,104 S.Ct. 2052, 2064; State v. Mills (1992), 62 Ohio St.3d 357, 370. Only if the defendant demonstrates that there is a reasonable possibility that, but for the unprofessional errors, the result of the proceedings against defendant would have been more favorable, will a reviewing court find prejudice. This probability must be sufficient to undermine confidence in the case's outcome. Statev. Bradley (1989), 42 Ohio St.3d 136, paragraph three of the syllabus.
The effectiveness of counsel must be reviewed in light of the evidence against the defendant, with a "strong presumption that counsel's conduct falls within the wide range of professional assistance." Strickland, 466 U.S. at 689, 104 S.Ct. at 2065;State v. Lytle (1976), 48 Ohio St.2d 391, 397, vacated in part on other grounds (1978), 438 U.S. 910, 98 S.Ct. 3135. The appellate court must not second-guess trial counsel's strategic decisions.State v. Carter (1995), 72 Ohio St.3d 545, 558.
In this case, appellant claims that his attorney failed to request discovery, investigate the burglary, interview witnesses, and prepare a defense. Appellant filed a motion for new trial, which he attempted to argue at his sentencing hearing, insisting that he was innocent and that his case had been inadequately prepared by his counsel.
A review of the docket sheet shows that appellant's counsel did not request a bill of particulars or discovery from the state. Generally, these requests are priorities for a defense attorney upon beginning preparation for a criminal case. However, in this case, appellant's counsel was present at the preliminary hearing and questioned Lindsay about what he had observed on the day of the burglary. Therefore, a request for a bill of particulars was probably not necessary. The absence of a request for discovery may have been the result of a strategic decision. Under the rules of criminal procedure, discovery requests by a defendant then allows the prosecution to reciprocate and file motions for discovery for particular information, including, for example, the names and addresses of the defense witnesses to be called at trial. See Crim.R. 16(C)(1)(a)-(c). Appellant has also failed to demonstrate that that the absence of these requests resulted in actual prejudice.
A review of the trial shows that appellant's counsel did prepare a defense for appellant. Appellant's counsel rigorously cross-examined the state's witnesses and tried to cast doubt on the thoroughness of the police investigation of the burglary. It was demonstrated that the police never found the television or any identifiable fingerprints. Appellant's counsel also challenged the reliability of Lindsay's identification and attempted to impeach Lindsay by pointing out discrepancies between his trial testimony and his preliminary hearing testimony. Appellant's counsel directly examined Hardeman, who testified in appellant's defense and provided a plausible alibi for appellant. We find that appellant was provided with an adequate defense at trial.
Appellant also claims that his counsel failed to investigate the crime or interview other witnesses. Counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. Strickland,466 U.S. at 691, 104 S.Ct. at 2066. "In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." Id.
Appellant argues that there were other people in the neighborhood who could have witnessed or committed the burglary and were not interviewed by his counsel. At trial, appellant's counsel asked Lindsay whether he lived in a predominantly white neighborhood. Lindsay answered that "there's some colored people that live across the street probably three houses down" and there were some other "black homes in the neighborhood." This statement could have suggested to the jurors that someone other than appellant committed the burglary. It does not show, however, that appellant's counsel failed to interview other people in the neighborhood or that his failure to interview them actually harmed appellant's case.
In his brief, appellant also insists that there was newly hired staff at the SLALS residence, including an African-American man that was not interviewed by his attorney. Appellant insists that had his counsel subpoenaed records of the SLALS staff, counsel could have interviewed this new hire and impeached Hibbard at trial when she failed to mention that she had recently hired this African-American man as a member of her staff. There was no evidence presented in the record suggesting that there had been a new hire that was an African-American man.
There may exist evidence outside the record that support appellant's claim of ineffective assistance of counsel. However, for the purposes of this appeal, our review is limited to the trial court record, which does not contain sufficient evidence to substantiate appellant's allegations. Where an appellant's claim of ineffective assistance of counsel is based upon facts not in the record, the appropriate remedy is a petition for postconviction relief, not direct appeal. State v. Cooperrider
(1983), 4 Ohio St.3d 226, 228. Because we refrain from adjudicating that part of appellant's claim which is based on facts that are not contained in the record before us, the doctrine of res judicata will not prevent appellant from raising the issue of ineffective assistance of counsel in a postconviction hearing. See id. at 228-229. Therefore, appellant may petition for a postconviction evidentiary hearing to develop a record upon which his claims of failure to investigate and failure to interview identified witnesses may be properly addressed. The second assignment of error is overruled.
Judgment affirmed.
POWELL, P.J., and KERNS, J., concur.
Kerns, J., retired of the Second Appellate District, sitting by assignment of the Chief Justice, pursuant to Section 6(C), Article IV of the Ohio Constitution.
[1] Lindsay's testimony in the record was consistent as to the type and color of the suspected vehicle. The only discrepancy was Officer Shumate's hearsay testimony about Linday's description of the suspect and the subsequent dispatch.
[2] The transcript of Hardeman's testimony states that she returned home at 2:15 p.m., but this appears to be a mistake, and should, in context, read 10:15 a.m.